\UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. MJ04-M-200-JLA

UNITED STATES

v.

GERALD NASTARI


**MEMORANDUM AND ORDER
ON
PROBABLE CAUSE AND DETENTION**

February 13, 2004

ALEXANDER, M.J.

The defendant, Gerald Nastari ("Mr. Nastari"), appeared before this Court on February 13, 2004 for a detention hearing pursuant to a complaint charging him with violations of 21 U.S.C. §§ 2113(a) and 1001 (respectively, bank robbery and willfully making false statement to the government). At the time, the government was represented by Assistant United States Attorney Seth P. Berman, who moved for detention pursuant to 18 U.S.C. § 3142 (f)(2)(A) (risk of flight). The defendant was represented by Federal Defender Paige Kelly.

In support of its motion to detain and to establish probable cause, the government offered the credible testimony of Special Agent Gary S. Cacace of the Federal Bureau of Investigation ("FBI"), and the affidavit sworn by Special Agent Cacace in support of the

application for a criminal complaint. The Court also had the benefit of a report on the defendant prepared by the Pretrial Services Office ("PSO"). The following recounts the evidence presented at the hearing and through the affidavit.

Special Agent Cacace is a veteran agent assigned to the Boston Bank Robbery Task Force. On May 24, 2003, he responded to a Fleet Bank branch located at 2 Cummings Park in Woburn, Massachusetts; the bank had been robbed earlier that morning. The affidavit presented to the Court indicates that two unknown white males had entered the bank and brandished firearms in order to rob the bank of more than $40,000 in cash and in excess of $26,000 in checks. Although bank tellers had contact with the robbers, the descriptions they provided to law enforcement personnel were neither detailed nor conclusive.

Special Agent Cacace testified at the hearing as to "similarities" between the man depicted in photographs of the defendant taken at the time of his arrest on or about February 11, 2004, and to the man appearing in the "stills" clipped and enlarged from the surveillance film at the bank. Special Agent Cacace candidly testified that although there were certain similarities in the facial features of the men in each set of images – and particularly in the chin and nose area – he could not state definitively that the men were the same. This Court had the benefit of viewing the images and upon doing so, found them to likely depict the same individual.

The Court's own viewing of the images, taken with Special Agent Cacace's testimony and other evidence presented (including fingerprint evidence and telephone records that cast

2

not insignificant doubt on the defendant's alibi at the time of the robbery, and the truthfulness of his statements to Special Agent Cacace and/or other investigators) warrant a finding of probable cause. The Court FINDS that there is PROBABLE CAUSE to believe that the defendant committed the offenses with which he is charged. The Court thus turns to the evidence and arguments presented on the issue of detention.

Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . " 18 U.S.C. § 3142 (e). "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings." United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990). The burden of persuasion remains with the Government on the question of flight risk. *See* id. at 1181, *citing* United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985). As is set forth more fully below, the Court is satisfied that the government has met its burden of proof by a preponderance of the evidence that the defendant's appearance may not be reasonably assured by any set of conditions.

The Court's independent analysis regarding detention was governed by the rubric set forth in 18 U.S.C. §3142(g).

Pursuant to Section 3142(g), the Court first looked to the nature and circumstances

of the offense charged against Mr. Nastari. The defendant is charged with an offense – bank robbery – that by its very nature portends great danger. Aside from the terror and potential harm it poses to tellers and other bank employees, members of the public and law enforcement personnel are placed at risk by such crimes. The circumstances here indicate that at least one firearm was used during the commission of the robbery, thereby illustrating the danger to all involved in the incident. Similarly, the offense of making a false statement to the government is concerning, particularly in that the falsity had the effect of misleading and evading law enforcement agents. The Court treats the offenses charged here as serious ones.

Second, the Court considered the weight of the evidence against the defendant. As mentioned previously, the evidence here is not insignificant. Probable cause is extant.

Third, Court looks at the history and characteristics of the defendant. In determining detention, the Court had the benefit of arguments by counsel and the report prepared by the PSO. That information indicates that Mr. Nasatari has many ties to the District: he is a native of Boston, and his siblings and child live in the greater Boston area. His family evidently supports him, affording him a temporary residence, proffering to serve as third-party custodian if he is released, and attending court proceedings.

He has a history of employment, but has been without work for more than two years. It does not appear that he has a verifiable permanent residence. Although he generally is in good health, he is afflicted with depression and currently takes medication to treat that

condition. He has no known alcohol or substance abuse history.

The defendant has criminal record that is of concern to the Court, despite the fact that many of the offenses are nearly twenty years old. He was convicted of assault with intent to kill in 1982 and given a suspended sentence by the Suffolk County Superior Court. In 1986, he was convicted by a jury in the Quincy District Court for various financial crimes purportedly related to embezzlement and committed to a house of corrections for period of eighteen months. He appealed that jury finding to another jury. Though he was unsuccessful in securing a different outcome, he ultimately received a more favorable disposition (suspended sentence) than what had been imposed in the first trial.

Equally concerning to the Court is that his record indicates repeated defaults. His counsel attempted to explain that many such events were failure to make restitution payments rather than failure to appear in court. Such arguments are not persuasive for it still appears that the defendant did not comply with the obligations imposed upon him by the law. Thus, despite the admirable support of his family, his history of defaults suggest an inability to conform to court orders.

Finally, the Court looked to the risk to the community posed by releasing the defendant. In the totality of circumstances here, including the use of firearms to rob the bank and the defendant's prior criminal history, the Court concluded that there is cause for concern should Mr. Nastari be released. Despite the admirable support of his family, the defendant faces significant penalties in this case.

Against this backdrop, the Court is satisfied by a preponderance of the evidence presented that there is a flight risk in Mr. Nastari and that the risk cannot be alleviated effectively by any condition or combination of conditions. Based on the findings and the factors outlined above, this Court therefore ORDERS that the defendant GERALD NASTARI be detained pending trial. Further, pursuant to 18 U.S.C. §3142 (i) it is ORDERED that:

1. The Defendant be, and hereby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The Defendant be afforded reasonable opportunity for private consultation with his counselor; and

3. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by Defendant's filing of a motion for revocation or amendment pursuant to 18 U.S.C. § 3145 (b).

SO ORDERED.

United States Magistrate Judge